ST. LUKE'S HOSPITAL, Judgment Creditor, *v.* WILLIAM GODET, Judgment Debtor.*

City Court of New York, Special Term, New York County, April 7, 1939.

* See *contra Novey* v. *Novey* (171 Misc. 672).

*Manfred Nathan*, for the judgment creditor.

*Cadwalader, Wickersham & Taft* [*Jacquelin A. Swords* and *Curtis S. Bates* of counsel], for the Bowery Savings Bank.

*Sherman & Sterling* [*Fairfax Leary, Jr.*, of counsel], for The National City Bank of New York, *amicus curiœ*.

*Byron B. Ralston*, for the Chemical Bank and Trust Company, *amicus curiœ*.

*Newman & Bisco* [*Henry Landau* of counsel], for the Manufacturers Trust Company, *amicus curiœ*.

*Parker, Chapin & Flattau* [*Stuart B. Glover* of counsel], for the Bank of the Manhattan Company, *amicus curiœ*.

WENDEL, Ch. J. This is an application by the judgment creditor to punish for contempt the Bowery Savings Bank for its disobedience of the injunctive provisions of a third-party subpœna in supplementary proceedings served upon it January 9, 1939. Pursuant to the subpœna, the third party appeared for examination. Such examination disclosed that at the time of the service of the subpœna there was on deposit with it in a joint account in the names of the debtor and his wife the sum of $41.65. After the service of the subpœna and before its return date the bank paid to the wife the amount on deposit and closed the account.

The subpœna contained a purported indorsement of section 781 of the Civil Practice Act, which indorsement was not a complete or correct copy of the section in effect at the time the subpœna was served, but a copy of the section as it read prior to its amendment by chapter 605 of the Laws of 1938, which amendment took effect September 1, 1938.

The bank claims that under the express language of section 781 the injunctive provisions did not restrain it from paying out moneys deposited with it to the credit of the debtor, unless the creditor also complied with subdivision 5 of section 239 of the Banking Law.

Section 781 of the Civil Practice Act, as amended by Laws of 1938, chapter 605, reads as follows:

" Upon the service of the subpœna upon the judgment debtor or any third party who has in his or its possession property or moneys belonging to the judgment debtor or who is indebted to the judgment debtor, such judgment debtor or third party is hereby forbidden to make or suffer any transfer or other disposition of, or to interfere with, any property belonging to the judgment debtor or to which he may be entitled or which may thereafter be acquired by or become due to said judgment debtor, or to pay over or otherwise dispose of any moneys due or to become due to such judgment debtor, not exempt by law from application to the satisfaction of the judgment, until the further order of the court.

" Any person served with said subpœna, who shall violate the provisions of said restraining provision, shall be subject to punishment by the court by fine and imprisonment or either, as and for a contempt. To effect such restraining provision, a copy of this section must be indorsed upon the copy of the subpœna served under this article. *The prohibition of the transfer as provided in this section shall not apply in any case where by any law of this State the effectiveness of any notice of adverse claim to any property is conditioned upon the commencement of an action, the giving of security or any other condition unless the judgment creditor shall have also complied with such conditions.*"

The part of the amendment here material is in italics.

At the time of the effective date of the amendment, the Banking Law, section 239, subdivision 5, relating to adverse claims against savings banks, so far as here material, read as follows: " Notice to any savings bank of an adverse claim to a deposit standing on its books to the credit of any person shall not be effectual to cause such savings bank to recognize such adverse claimant unless he shall also either procure a restraining order, injunction or other appropriate process against such savings bank from a court of competent jurisdiction in a cause therein instituted by him wherein

the person to whose credit the deposit stands or his executor or administrator is made a party and served with summons, or shall execute to such savings bank, in form and with sureties acceptable to it a bond, indemnifying such savings bank from any and all liability, loss, damage, costs and expenses, for and on account of the payment of such adverse claim or the dishonor of the order of the person to whose credit the deposit stands on the books of such savings bank."

Similar provision limiting the effectiveness of notices of adverse claims to deposits in commercial banks and trust companies is contained in section 134, subdivision 5, of the Banking Law.

Prior to the amendment, section 781 provided for a blanket injunction, and did not contain the qualifying words added by the 1938 amendment. The question of their interpretation is presented.

In construing statutes the primary consideration is to give effect to the intent of the Legislature. The meaning of a statute must be determined by its language. In determining such meaning, the change sought to be accomplished, and the history of the act may be considered. The statutory meaning of a word or phrase must be gathered from the purpose for which the law containing it was enacted. These considerations are merely aids, and the conclusion reached as to the meaning of the statute must be from the language of the act in connection with the relevant facts pertaining to the purpose sought to be accomplished.

The apparent purpose of the act was to give to banks the same protection against recognition of adverse claims to deposits as is given to them by the Banking Law, and it is not questioned that section 781 as amended gives such protection. It is claimed, however, that such section not only applies to adverse claimants (it is here conceded that the creditor is not an adverse claimant), but that the amendment in plain, unambiguous language expressly provides that the injunctive provisions in a third-party subpœna shall not operate as an injunction unless the creditor has also done the same things which an adverse claimant would have to do to make notice of his claim effective. That the prohibition of transfer is not limited in its application to adverse claims but, in the words of the amendment, applies " in any case where by any law of this State the effectiveness of any notice of adverse claim to any property is conditioned upon the commencement of an action, the giving of security or any other condition unless the judgment creditor shall have also complied with such conditions."

Literally, the words " in any case " are all-inclusive, and if they are to be given their literal meaning the section is here applicable. Words, however, though far reaching in their scope, may be limited

in their operation and effect where it may be gathered from the object and purpose of the statute that the language was designed to be restricted in its application to the subject-matter in reference to which they are used. Where particular claims of persons or things are mentioned in a statute, general words, preceding or following, are to be restricted to persons or things of like kind with those particularly mentioned, unless plainly otherwise intended.

In 1935 third-party subpœnas, except for time of service, were placed on the same footing as third-party orders. The scope of the injunctive provisions was the same. In 1937 the Committee on Law Reform of the Association of the Bar of the City of New York made certain recommendations as to changes in the Civil Practice Act. Among these were changes in the articles governing supplementary proceedings. Included in such recommendations was a proposed change in section 781, now under consideration. These recommendations were accompanied by proposed amendments, which, in the draft form prepared by the committee, were adopted by the Legislature verbatim. Without repeating in detail the report of the committee upon which the proposed amendment was based, said report summarizes its recommendations respecting the change in section 781 as follows: " In practice, it has been found that judgment creditors sometimes seek to enjoin the payment of funds out of a bank account or other account in the name of someone other than the judgment debtor on the ground that the money belongs to the judgment debtor. Such procedure, so far as it relates to a bank account, appears to be in conflict with section 134, subdivision 5, of the Banking Law. It is the opinion of the committee that express provision should be made to the effect that the Banking Law governs in this limited number of cases. This, in fact, would not deny to the judgment creditor any rights which he now may have, but will clarify the law and avoid confusion. Examination can always be had of such accounts by showing the judgment creditor's reasons to believe that property is hidden in such account. Moreover, an injunction may be granted if the creditor complies with the further conditions of section 134, subdivision 5, of the Banking Law."

The scope of the section prior to the amendment, and the purpose of the change as shown by the above recommendation and proposal of the Association of the Bar of the City of New York, considered in connection with the canons of construction above set forth, clearly show that the injunctive provisions of section 781 apply to bank accounts in the name of the judgment debtor and that the conditional prohibition against restraint contained in said section is not here applicable.

It is further claimed by the third-party bank that the restraining provisions of the subpœna are without force for the reason that the indorsement thereon was incorrect and incomplete and not a compliance with the requirements of section 781. Section 781, so far as relates to the effectiveness of the restraining provisions therein contained, reads as follows: " To effect such restraining provision, a copy of this section must be indorsed upon the copy of the subpœna served under this article." This provision was in the section as originally enacted (Laws of 1935, chap. 630) and though the section was materially amended by chapter 605 of the Laws of 1938 the requirement as to indorsement was not changed.

The indorsement on the subpœna served on the bank was a copy of the section as it read prior to its amendment in 1938, which amendment was effective when the subpœna was served. Hence the purported indorsement did not contain material provisions of the section which were effective at the time of the service of the subpœna.

The statute is clear and explicit. Its apparent intent was to inform the third party of the provisions of law pursuant to which the subpœna was issued and the restraining clause made part thereof, together with its extent. Giving consideration to the wording of the section and its intent it would seem that an indorsement of a correct and complete copy of the section in force at the time of the service of the subpœna is required. Obviously a copy of the section as it read before the amendment would not give the necessary information. The statute, though remedial, in that it is designed to afford to creditors a means whereby to secure payment of their judgments, is also of a penal nature in that it authorizes punishment through the medium of proceedings for contempt. The section provides that " Any person served with said subpœna, who shall violate the provisions of such restraining provision, shall be subject to punishment by the court by fine and imprisonment or either, as and for a contempt." Hence the statute should be strictly construed and should not be extended by construction to embrace cases not clearly within it or beyond its precise meaning and import. (Hathaway v. Johnson, 55 N. Y. 93.)

The creditor contends that the third party waived any defect in the indorsement by submitting to examination. The third-party subpœna has a double aspect. If duly served, attendance and examination are required. Whether or not it also operates as an injunction is dependent on whether or not the provisions for indorsement are valid. The inclusion of the indorsement is optional, not mandatory. Service of a subpœna not indorsed would require attendance and examination. Lack of indorsement does not

invalidate the subpœna as such, but merely goes to the question of its effect as an injunction. Consequently, the third party, by submitting to examination, did not waive its right to object to the invalidity of the injunctive provision of the subpœna by reason of the defectiveness of the indorsement. It is accordingly held that the injunctive provisions of the subpœna were not effective and imposed no restraint upon the third party.

The motion to punish for contempt is denied. Order signed.